UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| ENID CONLEY, | § |
| | § |
| Plaintiff, | § |
| | § |
| | § Case No.: |
| vs. | § |
| | § |
| JOHNSON AND WALES UNIVERSITY | § |
| CORP., | § TRIAL BY JURY DEMANDED |
| | § |
| Defendant. | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

ENID CONLEY, Plaintiff, complains of JOHNSON AND WALES UNIVERSITY CORP., (hereinafter "Defendant") and for cause of action would show the Court as follows:

### INTRODUCTION

1. Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2. Plaintiff files this Complaint and complains about race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended.

3. Plaintiff files this Complaint and complains of race discrimination under 42 U.S.C. §1981.

4. This action seeks compensatory and punitive damages, lost wages (past, present, and future), attorney's fees, taxable court costs, pre-judgment and post-judgment interest.

### PARTIES

5. Plaintiff ENID CONLEY is a resident of Sparks, Nevada.

6. Defendant JOHNSON AND WALES UNIVERSITY CORP. is an educational institution operating in Miami, Dade County, and may be served with process by mail or in person by serving their registered agent, C T CORPORATION SYSTEM, 1200 SOUTH PINE ISLAND ROAD, PLANTATION, FL 33324.

## VENUE

7. Venue is appropriate in the United States District Court for the Southern District of Florida, Miami Division, in that the Defendant can be said to reside and/or do business in this district and a substantial part of the events or omissions giving rise to the claim occurred here as required under 28 U.S.C. §1391.

## JURISDICTION

8. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction), under Title VII of the Civil Rights Act of 1964, as amended, and based on race discrimination in employment under 42 U.S.C. §1981.

9. The unlawful employment practices were committed within the jurisdiction of this Court.

## PROCEDURAL PREREQUISITES

10. All conditions precedent to the filing of this action have been met by Plaintiff. She filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC"), received a Notice of Right to Sue letter from said agency to pursue her claims, and files suit within the statutory period.

11. Plaintiff filed a Charge of Discrimination against Defendants with the EEOC on August 25, 2015 within 300 days of the last discriminatory act.

12. On July 28, 2017, Plaintiff received from the EEOC a Notice of Right to Sue letter, entitling her to file suit on her claim of discrimination based on race, and retaliation.

13. The filing of this lawsuit has been accomplished within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue letter from the EEOC.

## FACTS

14. Defendant hired Plaintiff to teach in its Criminal Justice Program as an adjunct professor in the College of Business (COB) in 2004 and she continued to work there until October 2014.

15. In May 2004, Plaintiff was offered a full time position as a criminal justice instructor due to her excellent work.

16. Plaintiff is licensed as a Police Officer in the state of Texas.

17. Plaintiff is licensed as a Police Officer in the state of Florida.

18. Plaintiff has a PhD in Educational Leadership.

19. Plaintiff has a EdS (Education Specialist) in Adult and Community education.

20. At all times material hereto, Plaintiff worked for Defendant at its School of Business at its North Miami campus.

21. Throughout all the years of Plaintiff's employment at Defendants her teaching abilities have never been questioned.

22. Throughout all the years of Plaintiff's employment at Defendants there have been no complaints about her.

23. Plaintiff is Native American.

24. At the time of Plaintiff's constructive discharge, the interim President of respondent was Dr. Larry Rice, a black male.

25. At Defendant, Black Heritage Month is celebrated but not the Native American Heritage Month.

26. On various occasions Plaintiff approached Dr. Rice regarding Native American Heritage Month in order to celebrate and coordinate events in celebration of Native Americans and was always given an excuse or barrier.

27. Derogatory posters that depicted Native Americans were posted by a boys club all over the school, year after year, during Plaintiffs employment at Defendants. Plaintiff and others complained to Dr. Rice about the stereotypical and derogatory posters and nothing was done about it.

28. Plaintiff approached Ashley Haney (Director of Student Activities) who was allowing the posters to be placed and was told by Ms. Haney that she could put up whatever poster she wanted and that Plaintiff was just an "Indian thief".

29. Plaintiff reported Ms. Hanley's discriminatory comments to Dr. Leoni (Plaintiff's first Dean) and she immediately called Ismarie Monreal and Dr. Rice, and nothing was done about it.

30. Plaintiff appeared in front of the Promotions Committee in 2014.

31. Plaintiff was not promoted in 2014.

32. Plaintiff appeared in front of the Promotions Committee in 2014 and they questioned Plaintiff's integrity and verbally stated that they did not believe Plaintiff despite her bringing documentary evidence of her work product and accomplishments.

33. Plaintiff complained to Dr. Rice about the faculty members questioning her integrity without cause and not promoting her and Dr. Rice said he could do nothing.

34. Wendy Walberg, a white female, was promoted, even though Plaintiff was more qualified for the promotion.

4

35. Faculty members at Defendant must attend conferences for Professional Development. To Plaintiff's knowledge she was the only faculty member who was required to take personal time off when she went to conferences where she represented the University and presented research that she conducted.

36. In May 2014, the Criminal Justice faculty was told that it would be moved from the College of Business to the College of Arts and Sciences starting the 2014-2015 academic year because the University was restructuring.

37. In September 2014, Dr. Rice arranged a meeting with the Criminal Justice faculty, Dean Garcia (black female), Dean Koris (white female), Jordan Fickess (white male), and Maheen Carol (white female).

38. During the meeting of September 2014 the Criminal Justice faculty members were told that Mr. Fickess and Ms. Caroll conducted focus groups with the students and claimed that only 20% of the students were graduating and that it was the fault of the faculty.

39. During the September 2014 meeting it was also stated that the focus group had a 70% satisfaction rate with the faculty.

40. During the meeting Dr. Rice told the faculty that if this was not fixed he would cut the program.

41. The statistics used in the meeting were from the 2006 Academic Year, instead of the 2013 statistics.

42. Plaintiff told Dr. Rice during the meeting that he had to be fair because the statistics were outdated and Dr. Rice yelled at Plaintiff, "That is not what I want to hear Dr. Conley".

43. During the meeting only the Plaintiff who is a Native American was spoken to in a disrespectful manner.

44. As Plaintiff was walking out of the meeting, Dr. Fickess, said to Plaintiff, "In all fairness, the students were and are leaving because of money", not because of faculty members.

45. In October 2014 when the statistics for the 2013 Academic year came out, the Criminal Justice program had the highest retention and graduation rate of all academic programs.

46. On October 7, 2014, the faculty teaching Criminal Justice courses had an appointment with Dean Carol Koris of the College of Arts and Sciences, regarding "fixing the Criminal Justice problem". The Criminal Justice Department was moved to Arts and Sciences in 2014.

47. Plaintiff received an email from Dean Koris, requesting her to come in earlier and by herself, because she needed to discuss something with her.

48. During the appointment Plaintiff was presented with a paper by Dean Koris that had her name and it stated to immediately remove her from all classes.

49. Dean Koris told Plaintiff that the Department of Education had emailed Dr. Rice and he forwarded the email to her to discuss why Plaintiff could not continue teaching Criminal Justice.

50. Dean Koris stated that the Department of Education had investigated all of the faculty educational background and since Plaintiff did not have 18 graduate credit hours in Criminal Justice or a certification, she could no longer teach it.

51. Dean Koris stated during the appointment that Plaintiff's extensive background as a police officer and certifications was not sufficient to qualify her to teach Criminal Justice classes.

52. Plaintiff told Dean Koris that during the 10 years she has been employed at defendant she had never heard that she needed 18 graduate credits in Criminal Justice in order to teach such classes and that if she had known she would have taken care of that a long time ago.

6

53. On October 8, 2014 Plaintiff went to see Dr. Rice and he asked his secretary, Amanda Edun, to leave the room, which was very unusual as she takes notes of everything.

54. Dr. Rice, Dean Koris and Plaintiff met and Dr .Rice told Plaintiff that she could not teach Criminal Justice anymore because she did not have 18 graduate credit hours or certifications in Criminal Justice and that he would place Plaintiff to teach classes such as "Leadership", "Communications", and other "English" courses.

55. Plaintiff did not have 18 graduate credit hours in business leadership, communications or English nor did she have the knowledge to teach them.

56. Plaintiff told Dr. Rice during the meeting that she was a certified Police Officer in two states, Florida and Texas, and that she had many certifications in both states and he ignored her.

57. Plaintiff asked Dr. Rice during the meeting why she was never informed and Dr. Rice told Plaintiff that she was not informed because things are usually handled without the faculty knowing.

58. Plaintiff asked Dr. Rice for the documentation of the Department of Education, and he said that he could not do that. Further, he stated "you will teach what you are told with enthusiasm".

59. Plaintiff asked Dr. Rice if she could not teach Criminal Justice, how she could teach courses for which she does not have the graduate credit hours and have no knowledge of, and Dr. Rice ignored Plaintiff's question. This was common behavior by Dr. Rice because he did not like Plaintiff because of her race and because she advocated for Native American Heritage Month.

60. Plaintiff during the meeting asked Dr. Rice how she could teach the English and Communications courses for two more terms since there were not enough courses (stated by Carol Koris) and Dr. Rice ignored Plaintiff's question.

61. Florida's Department of Education "Guidelines on Transfer Agreements and Faculty Credentials and Qualifications" allows members to be accredited without "formal academic preparation". It further states the faculty member can be accredited if it "has outstanding professional experience and demonstrated contributions to the teaching discipline, which may be presented in lieu of formal academic preparation". "The faculty member has training in a closely related discipline and the competencies needed to teach the course objectives were covered in the related disciplines".

62. Plaintiff has experience teaching Criminal Justice courses for over eleven years, a professional license as a police officer in two states, Texas and Florida, 25 years of experience as a police officer, publications, certifications, speaking engagements, and overall teaching excellence in Criminal Justice.

63. Other members of the Criminal Justice faculty, Wendy Walberg (white) and David Sabot (white), both have JD's but they do not have 18 graduate credits in Criminal Justice and yet they were permitted to keep teaching Criminal Justice courses as opposed to Plaintiff.

64. On October 9, 2014 Plaintiff received verification for a meeting for October 14, 2014 with Dr. Rice. Later, Dr. Rice cancelled the meeting because he did not want to meet with Plaintiff.

65. On October 23, 2014 Plaintiffs teaching schedule changed from Criminal Justice courses to communications and business courses. Plaintiff had no competency to teach these courses, and she was clearly given these courses to teach in order to constructively discharge her.

8

66. On October 23, 2014 Plaintiff was forced to deliver a letter of resignation to Dr. Rice because she could not bear the discrimination against her because of her race and the retaliatory actions against her for her complaints of discrimination.

67. After Plaintiff's termination she was replaced, as expected, by a non Native-American.

68. Defendant allowed "unqualified" non Native American individuals to continue teaching.

69. Defendant by and through its agents and employees worked together to create a hostile work environment for Plaintiff but did not do so for similarly situated, non Native-American faculty members.

70. Defendant by and though its agents and employees worked together to demote Plaintiff from her position but did not do so for similarly situated, non Native-American faculty members.

71. All conditions precedent to the filing of this action have been met by Plaintiff.

## COUNT I: TITLE VII RACE DISCRIMINATION

72. Plaintiff re-alleges and incorporates Paragraphs 14-71 of this Complaint as if fully set forth herein.

73. Defendant, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by Title VII of the Civil Rights Act of 1964, as amended.

74. Defendant has maintained a policy of race discrimination in violation of the foregoing statutes against Plaintiff.

75. If Plaintiff were not Native-American, she would not have been discriminated against and treated poorly, and therefore would not have complained, thereby avoiding retaliatory discharge.

## COUNT II:

## TERMINATION ON THE BASIS OF RETALIATION UNDER TITLE VII

76. Plaintiff re-alleges and incorporates in count two paragraphs 14-75.

77. Defendants, by and through their agents and employees, intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by Title VII, as amended.

78. Based on Plaintiff's complaints about race discrimination, she was retaliated against by not being promoted, being demoted and then forced to resign.

79. Had Plaintiff not complained about race discrimination, Defendant would not have retaliated as described above.

## COUNT III: 42 U.S.C. §1981 RACE DISCRIMINATION

80. Plaintiff re-alleges and incorporates Paragraphs 14-79 of this Complaint as if fully set forth herein.

81. Plaintiff was subject to race discrimination at work and was constructively discharged because of her race.

82. Defendant intentionally treated Plaintiff differently than other faculty members of other races.

## DAMAGES

83. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress.

## EXEMPLARY DAMAGES

84. Defendant's actions were intentional, willful, harsh, oppressive, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress. The wrongs done by the Defendants were aggravated by the kind of willfulness, wantonness and malice for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendants from such conduct in similar situations.

## ATTORNEY'S FEES

85. Defendant's actions and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining the services of COANE AND ASSOCIATES, PLLC, in order to initiate this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## DEMAND

86. Plaintiff hereby makes her demand for a jury trial.

## PRAYER

87. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the following relief:

a. Back Pay;

b. Pre-Judgment Interest on Back Pay;

c. Front Pay;

11

d. Compensatory Damages, including but not limited to emotional distress;

e. Punitive Damages;

f. Injunctive and Affirmative Relief;

g. Attorney's Fees and Costs;

h. Such other and further relief, at law or in equity, general or special to which Plaintiff may show she is justly entitled.

Filed: October 3, 2017

Respectfully submitted,
/s/ Melba Rivera
Melba Rivera, Esq.
FL Bar No. 1000519
Email: melba.rivera@coane.com
Arthur Mandel, Esq.
FL Bar No. 22753
Of Counsel: Bruce Coane, Esq.
S.D. Tex Bar No. 7205
Coane and Associates, PLLC
407 Lincoln Road, #11-B
Miami Beach, FL 33139
Telephone: (305) 538-6800
Facsimile: (866) 647-8296
**ATTORNEY FOR PLAINTIFF**